## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| CHRISTOPHER RENTOLA and SHERREE RENTOLA, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 20-cv-11589 |
| | ) | |
| | ) | Hon. Stephanie Dawkins Davis |
| DOW JONES & COMPANY, INC., a Delaware corporation | ) ) | Magistrate Elizabeth A Stafford |
| Defendant. | ) ) | |
| | ) | |

## DEFENDANT DOW JONES & COMPANY, INC.'S MOTION TO DISMISS

Defendant Dow Jones & Company, Inc. ("Dow Jones"), hereby moves to dismiss the Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, to strike or dismiss the class allegations of the Complaint and dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(f), or 23(d)(1), or, in the alternative, to limit the Plaintiffs' alleged period of recovery pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(f), or 23(d)(1). In support of this Motion, Dow Jones relies upon and incorporates the Brief filed concurrently with this Motion.

On August 10, 2020, there was a conference between the parties' counsel, during which Dow Jones explained this Motion and its legal basis. Dow Jones requested, but did not obtain, concurrence in the relief sought.

WHEREFORE, Dow Jones respectfully requests that this Court grant this Motion, dismiss the Complaint in its entirety with prejudice for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, strike or dismiss the class allegations of the Complaint and dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6), 12(f), or 23(d)(1), or, in the alternative, limit the Plaintiffs' alleged period of recovery pursuant to Fed. R. Civ. P. 12(b)(6), 12(f), or 23(d)(1), and award any other relief that the Court deems necessary and just.

Dated:  August 17, 2020           Respectfully submitted,

s/  *Natalie J. Spears*
Peter B. Kupelian (P31812)
Carol Schley (P51301)
CLARK HILL PLC
151 S. Old Woodward Ave, Suite 200
Birmingham, Michigan 48009
Tel: (248) 530-6336
pkupelian@clarkhill.com
cschley@clarkhill.com

Natalie J. Spears
Kristen C. Rodriguez
DENTONS US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606-6404
Tel:  (312) 876-8000
Fax:  (312) 876-7934
natalie.spears@dentons.com
kristen.rodriguez@dentons.com
*Counsel for Defendant Dow Jones & Company, Inc.*

115287642

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 17, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

<u>*s/ Natalie J. Spears*</u>

Natalie J. Spears

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

CHRISTOPHER RENTOLA and )
SHERREE RENTOLA, individually and )
on behalf of all others similarly situated, )
                                     )
                Plaintiffs, )
         v. )         Case No. 20-cv-11589
                                     )
                                     )         Hon. Stephanie Dawkins Davis
DOW JONES & COMPANY, INC.,   a )         Magistrate Elizabeth A Stafford
Delaware corporation )
                     Defendant. )
_____ )

## BRIEF IN SUPPORT OF DEFENDANT
## DOW JONES & COMPANY, INC.'S MOTION TO DISMISS

Peter B. Kupelian (P31812)
Carol Schley (P51301)
CLARK HILL PLC
151 S. Old Woodward Ave, Suite 200
Birmingham, Michigan 48009
Tel: (248) 530-6336
pkupelian@clarkhill.com
cschley@clarkhill.com

Natalie J. Spears
Kristen C. Rodriguez
DENTONS US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606-6404
Tel:  (312) 876-8000
natalie.spears@dentons.com
kristen.rodriguez@dentons.com
*Counsel for Defendant Dow Jones & Company, Inc.*

## <u>ISSUES PRESENTED</u>

ISSUE 1:    Whether Plaintiffs' claims for statutory damages based on alleged conduct by Dow Jones during parts of 2015-2016 are time-barred?

DEFENDANT'S ANSWER:    Yes; this action is time-barred and cannot be resurrected even with the benefit of the federal *American Pipe* tolling doctrine, codified under Michigan law.

ISSUE 2:    Whether recent Michigan state court administrative orders providing certain litigants time courtesies due to COVID-19 apply to save Plaintiffs' otherwise time-barred claims?

DEFENDANT'S ANSWER:    No; these administrative orders do not apply in this case in federal court.

ISSUE 3:    Whether, even if the Michigan COVID state court administrative orders applied to Plaintiffs' claims in federal court, Michigan law follows federal tolling law including the U.S. Supreme Court's decision in *China Agritech*, and thus prohibits successive class actions like this one from benefitting from tolling, permitting only an individual claim to proceed following dismissal of a prior class action?

DEFENDANT'S ANSWER:    Yes; Plaintiffs' class claims should be stricken because only Plaintiffs' individual claims would survive under *China Agritech* (and only for the limited amount of time remaining on the statute of limitations period even if the Michigan administrative orders apply); accordingly, this Court should dismiss the remaining individual claims without prejudice for consideration in state court where they should have been brought at the outset.

ISSUE 4:    Whether Plaintiffs' claims for unjust enrichment fail?

DEFENDANT'S ANSWER:    Yes.  These claims are also time barred and fail as a matter of law for other reasons.

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

Fed. R. Civ. P. 12(b)(6)

MCL § 600.5805(2)

*American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974)

*China Agritech Inc. v. Resh*, 138 S. Ct. 1800 (2018)

MCR 3.501(F)

Michigan Administrative Order 2020-3

Michigan Administrative Order 2020-18

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ............................................................1

BACKGROUND .................................................................................3

    I.    History Of The Michigan PPPA. .........................................3

    II.   The *Horton* Action. ............................................................5

    III.  The Rentolas And Their Untimely Claims............................7

    IV.  This Michigan State Law Class Action Could Not Be Brought In Michigan State Court. ........................................8

ARGUMENT ......................................................................................9

    I.    The Rentolas' Claims are Untimely and Should Be Dismissed Pursuant to Federal Rule of Civil Procedure 12(b)(6). ........................9

        A.   Class Action Tolling Does Not Save Plaintiffs' Untimely Claims. ......................................................10

            1.   Michigan State Law Tolling Rules Model *American Pipe* Federal Tolling Principles. ....................10

            2.   The Rentolas' Class Claims Are Untimely Even With The Benefit Of *American Pipe* Tolling. ................11

            3.   Successive Class Actions Are Not Tolled In Any Event. ..................13

            4.   The Limitation On Tolling Of Successive Class Actions Is Broad And Applies Regardless Of How The Prior Action Terminated.........................................15

        B.   The Michigan State COVID-19 Administrative Orders Do Not Apply Here. ....................................17

II.    In The Alternative, And At Minimum, The Court Should Strike
       Or Dismiss The Class Allegations And Dismiss This Action, Or
       If Not Dismissed, Limit The Plaintiffs' Alleged Period Of
       Recovery..............................................................................................20

III.   Plaintiffs' Unjust Enrichment Claim Also Fails As A Matter Of
       Law.......................................................................................................23

CONCLUSION .....................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Pipe & Construction Co. v. Utah*,
414 U.S. 538 (1974)..........................................................................*passim*

*Betances v. Fischer*,
403 F. Supp. 3d 212 (S.D.N.Y. 2019) ..............................................15

*Boelter v. Advance Magazine Publishers, Inc.*,
210 F. Supp. 3d 579 (S.D.N.Y. 2016) .........................................8, 18

*Boelter v. Hearst Commc'ns, Inc.*,
269 F. Supp. 3d 172 (S.D.N.Y. 2017) ...................................4, 5, 9, 22

*Burkholder v. Lenawee County Road Comm'n*,
905 F. Supp. 421 (E.D. Mich. 1995) .................................................19

*Collins v. Vill. Of Palatine*,
875 F.3d 839 (7th Cir. 2017) .............................................................12

*Coulter-Owens v. Time Inc.*,
695 Fed. App'x 117 (6th Cir. 2017) .....................................................5

*Cowles v. Bank West*,
476 Mich. 1 (2006) ....................................................................11, 15

*In re DoubleClick Inc. Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ...............................................23

*Edwards v. Aetna Life Ins. Co.*,
690 F.2d 595 (6th Cir. 1982) .............................................................20

*F5 Capital v. Pappas*,
856 F.3d 61 (2d Cir. 2017) ................................................................21

*Gordon v. Chipotle Mexican Grill, Inc.*,
344 F. Supp. 3d 1231 (D. Colo. 2018)...............................................24

*Han v. Hankook Tire Co.*,
799 F. App'x 347 (6th Cir. 2020).......................................................20

*Horton v. Dow Jones & Co.*,
    2019 WL 952314 (S.D.N.Y. Feb. 27, 2019) ...................................................6, 14

*Horton v. Dow Jones & Co.*,
    804 Fed. App'x 81 (2d Cir. 2020) .................................................................6, 20

*Horton v. Dow Jones*,
    No. 18-cv-04027 (S.D.N.Y.)..........................................................................1, 5

*Johnson v. City of Saginaw*,
    2017 WL 6512451 (E.D. Mich. Dec. 20, 2017) ...................................................6

*Kraft v. Detroit Ent'mnt, LLC*,
    261 Mich. App. 534 (2004) ...........................................................................24

*New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP*,
    336 F.3d 495 (6th Cir. 2003) .........................................................................9

*Ott v. Midland-Ross Corp.*,
    523 F.2d 1367 (6th Cir. 1975) .......................................................................9

*Pacheco v. Boar's Head Provisions Co.*,
    2010 WL 132385 (W.D. Mich. Mar. 30, 2010).................................................24

*PCA Minerals, LLC v. Merit Energy Co.*,
    725 Fed. App'x 342 (6th Cir. 2018) ................................................................23

*Perlin v. Time Inc.*,
    237 F. Supp. 3d 623 (E.D. Mich. 2017) ...........................................................24

*Practice Mgmt. Support Servs. v. Cirque Du Soleil Inc.*,
    2018 WL 3659349 (N.D. Ill. Aug. 2, 2018) ...............................................15, 16

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*,
    559 U.S. 393 (2010)......................................................................................8

*Spelta v. Bakker*,
    2020 WL 2732070 (D. Md. May 26, 2020).......................................................19

**Statutes**

Preservation of Personal Privacy Act, MCL § 445.1711, *et seq.* .....................*passim*

Class Action Fairness Act, 28 U.S.C. § 1332(d) .......................................................8

MCL § 600.5805(2) .........................................................................................5

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ...........................................9, 10

Federal Rule of Civil Procedure 12(f) ......................................................10

Federal Rule of Civil Procedure 23(d)(1)(D) ...................................10, 22

MCR 1.103 ...................................................................................................19

MCR 1.108 ...........................................................................................17, 19

MCR 3.501(A)(5)..................................................................................2, 4, 8

MCR 3.501(F)................................................................................11, 12, 15

Michigan Supreme Court Administrative Order 2020-3 ...........................17, 18, 19

Michigan Supreme Court Administrative Order 2020-18 .........................17, 18, 19

## PRELIMINARY STATEMENT

This action is time-barred.  Plaintiffs Christopher and Sherree Rentola (the "Rentola Plaintiffs") seek to bring an untimely putative class action against Defendant Dow Jones & Company, Inc. ("Dow Jones"), the publisher of *The Wall Street Journal*, in their quest for millions of dollars in collective statutory damages under a prior version of a Michigan statute, the Preservation of Personal Privacy Act ("PPPA").  But none of the various "tolling" theories upon which Plaintiffs must depend to pursue what are clearly stale claims can possibly resuscitate them.

In 2016, the Michigan Legislature amended the PPPA, effective July 31, 2016, to deliberately eliminate the $5,000 statutory damages provision because that provision had spawned unintended "no injury" class actions just like this one, and the Legislature wanted to put an end to it.  Plaintiffs filed this purported class action nearly four years later, on July 16, 2020—well outside of the three-year statute of limitations for statutory damages under the old PPPA, which ran on July 30, 2019.  The Rentola Plaintiffs simply waited too long to bring their claims.

Nor can Plaintiffs save their untimely claims with "tolling" arguments based on another failed class action against Dow Jones brought by the same Plaintiffs' counsel here, *Horton v. Dow Jones*, No. 18-cv-04027 (S.D.N.Y.) ("*Horton*").  The *Horton* action was filed on May 4, 2018; it was a substantively identical class action to this one.  The district court dismissed *Horton* on February 27, 2019

1

(which the Second Circuit upheld on appeal).  While Plaintiffs may seek to invoke the Supreme Court's *American Pipe* rule (adopted under Michigan law), any such tolling period would be limited to the pendency of *Horton* (from the time of its filing to its dismissal); and so it ran on May 26, 2020.  The filing of this action by the Rentolas on July 16, 2020, was too late, *even with* the benefit of tolling.

Further still, given the Supreme Court's recent decision in *China Agritech*, at most the only claims that would have been tolled under *American Pipe* by virtue of the *Horton* action were the Rentola Plaintiffs' *individual* claims.  There is no tolling of the statute of limitations for a successive class action like Plaintiffs' here.

These straightforward legal principles should end the matter.  However, Plaintiffs have raised a last ditch attempt to somehow salvage their untimely claims:  they grasp onto the administrative orders issued by the Michigan state courts due to COVID-19, effective from March 10, 2020 to June 20, 2020.  That gambit also fails in the circumstances here.  No such orders extend the deadlines for commencing actions in this Court or the Sixth Circuit, and obviously the Michigan state administrative orders—internal operating procedures for the state judiciary born of extraordinary circumstances specific to that state court system—are not binding here.  In addition, Michigan state courts, the same body that issued the COVID administrative orders, prohibit class actions seeking statutory damages like this one from Michigan state court altogether.  *See* MCR Rule 3.501(A)(5).

Having elected to file this case in federal court specifically to avoid that express bar, Plaintiffs cannot ask this Court to excuse their delay based on administrative orders issued by the very same state courts whose doors are always closed to this type of case.  Plaintiffs' gamesmanship should be rejected out of hand.

But even if the Michigan COVID orders applied (and they should not), under *China Agritech* the class claims should be stricken, as only the named plaintiffs' *individual* claims could survive (and only for the very short period of time remaining on the statute of limitations).  Thus, at a minimum, this Court should dismiss the individual claims without prejudice for consideration in state court.  Finally, Plaintiffs' tag-along unjust enrichment claims also fail for independent reasons.  Dismissal is in order.

## BACKGROUND

### I.   History Of The Michigan PPPA.

The Michigan PPPA was passed in 1988 in the wake of a federal statute, the "Video Privacy Protection Act," prompted by concerns about the disclosure in a newspaper of Supreme Court nominee Judge Robert Bork's video rental choices. Michigan's law went further than the federal Act, however.  In addition to video rental records, its scope includes "books or other written materials," proscribing certain "disclosures" of records or information "concerning the purchase, lease, rental, or borrowing of those materials."  MCL § 445.1712 (1989).

3

The Michigan statute sat on the books for nearly 30 years until plaintiffs' class action counsel (including counsel here) started bringing a series of no-injury class action suits against magazine publishers.  These class action suits attacked the publishing industry's "list rental" practice—a decades-old, well-established practice that long predates the enactment of the PPPA and involves renting subscriber lists and information to other companies for "direct marketing" purposes to send advertisements directly to consumers.  The allure of class actions under the PPPA was a statutory damages provision that previously permitted an action for actual damages or $5,000 in statutory damages, whichever was greater.  *Id.* § 445.1715.

With no actual damages suffered by any plaintiff whatsoever, the prior PPPA class action suits filed against the publishing industry sought statutory damages of $5,000 per every subscriber, threatening "in terrorem" class action damages in an already struggling industry.[1]  In the wake of these potentially crippling class action lawsuits facing the publishing industry filed solely in federal court,[2] the Michigan Legislature amended the PPPA to "cure and clarify" the

---

[1] With little interpretive precedent, and facing potentially ruinous liability, many publishers sued prior to the expiration of the PPPA's statutory damages provision entered into multi-million dollar class settlements.  *E.g. Hearst,* 15-cv-09279 (S.D.N.Y.) ($50 MM); *Consumers Union*, 16-cv-02444 (S.D.N.Y.) ($16.375 MM); *Condé Nast*, 15-cv-05671 (S.D.N.Y.) ($13.75 MM).

[2] Michigan Court Rule 3.501(A)(5) prohibits class actions for statutory damages absent express authorization in the statute.  However, Rule 23 displaces such state rules where plaintiffs rely on CAFA jurisdiction.  *See infra* Background § IV.

4

statute.[3]  Among other things, the 2016 Amendment expressly removed the

provision for $5,000 statutory damages, and in its place, provided that only a

customer "who suffers actual damages as a result of a violation of this act may

bring a civil action."  MCL § 445.1715(2).  The Amendment took effect July 31,

2016; thus, July 30, 2016 was the last day that the $5,000 statutory damages

provision was in place.[4]  Because the PPPA has a three-year statute of limitations,

the last day to bring a claim for $5,000 in statutory damages under the PPPA was

July 30, 2019.  *See* MCL § 600.5805(2) (three-year limit for personal injuries).[5]

## II.    The *Horton* Action.

Over two years ago, on May 4, 2018, the same plaintiffs' lawyers who are

bringing this action on behalf of the Rentola Plaintiffs filed another Michigan

PPPA class action against Dow Jones in the Southern District of New York,

*Horton v. Dow Jones*, No. 18-cv-04027 ("*Horton*").  *Horton* contained the same

verbatim allegations as the Rentolas bring in this action against Dow Jones,

claiming that Dow Jones disclosed the named plaintiff's and other class members'

"Personal Reading Information" ("PRI")—*i.e.*, their name, home address, and the

---

[3] S.B. 490, 98th Leg., Reg. Sess., P.A. No. 92 (codified at MCL § 445.1711).

[4] The 2016 Amendment applied only prospectively, beginning on July 31, 2016, because the Amendment did not use "retroactive" language.  *See, e.g., Coulter-Owens v. Time Inc.*, 695 Fed. App'x 117, 121 (6th Cir. 2017).

[5] *See also Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172, 187 (S.D.N.Y. 2017) (applying three-year statute of limitations to PPPA claims).

title of the publication they purchased—to third parties without consent or the requisite notice, and that such disclosures violated the PPPA. So as to take advantage of the $5,000 statutory damages that were in effect during the remaining three-year statute of limitations time period, Plaintiff Horton filed a class action on behalf of all Dow Jones Michigan subscribers whose PRI was disclosed between May 4, 2015 (three years prior to *Horton*'s filing, to the day), and July 30, 2016. (*Horton* Compl., Ex. 1.)[6]

However, plaintiff Horton had agreed to Dow Jones' Subscriber Agreement, which contained an agreement to arbitrate and a class action waiver. *Horton v. Dow Jones & Co.*, 2019 WL 952314, at *1 (S.D.N.Y. Feb. 27, 2019) (Ex. 3). The *Horton* district court thus found Plaintiff had waived his ability to bring a class action, leaving only his individual PPPA claim, over which it declined to exercise jurisdiction. *Id.* at *3-4. The *Horton* complaint was dismissed on February 27, 2019, and the Second Circuit affirmed on April 1, 2020. *Horton v. Dow Jones & Co.*, 804 Fed. App'x 81 (2d Cir. 2020).

---

[6] This Court may take judicial notice of the prior *Horton* filings when ruling on this motion to dismiss without converting it to summary judgment, as prior court filings are appropriate matters for judicial notice. *See Johnson v. City of Saginaw*, 2017 WL 6512451 at *3 (E.D. Mich. Dec. 20, 2017) (citing multiple Sixth Circuit cases) (Ex. 2).

III.     **The Rentolas And Their Untimely Claims.**

The Rentolas' Complaint was filed on June 16, 2020, nearly a year after the

last day to file a claim seeking statutory damages under the prior version of the

PPPA (*i.e.*, July 30, 2019), and over a year and three months since *Horton* was

dismissed on February 27, 2019.

Other than the named plaintiffs and a more limited class definition, this class

action reads verbatim to *Horton*.  The Rentola Plaintiffs are Michigan residents

who subscribed to print editions of *The Wall Street Journal* at various times.

(Compl. ¶¶ 10-11.)  The Rentolas allege, just as Horton did, that Dow Jones

disclosed their PRI to third parties without consent or the requisite notice.  The

Rentolas allege that such disclosures violated the PPPA (Compl. ¶ 74), and seek

statutory damages of $5,000 per class member (Compl. ¶ 79).  The Rentolas

include, just as Horton did, a tag-along claim for "unjust enrichment" as Count II

of the complaint, based on the same alleged PPPA violation.  (Compl. ¶¶ 80-93.)[7]

The Rentolas bring this putative class action on behalf of themselves and all

other Michigan residents who allegedly had their PRI disclosed to a third party by

Dow Jones without consent between May 4, 2015, and July 30, 2016 (the same

time period as *Horton*).  (Compl. ¶ 51.)  However, given the unfavorable result in

---

[7] The original *Horton* complaint included an unjust enrichment count, but that
count was intentionally dropped from the amended complaint on July 13, 2018.
(*See Horton* 1st Am. Compl., Ex. 4.)

*Horton* (which the Rentolas do not reference in their complaint), the class

definition here excludes "any person who has ever entered into a version of *The*

*Wall Street Journal* 'Subscriber Agreement' that contained a section titled

'Agreement to Arbitrate' with Defendant."  (*Id.*)[8]

## IV.    This Michigan State Law Class Action Could Not Be Brought In Michigan State Court.

Although Plaintiffs' claims are based exclusively on a Michigan state law,

the PPPA, the Rentolas initiated their action in federal court, basing jurisdiction on

the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").  (Compl. ¶ 13.)

This case is only possible due to a loophole under CAFA, as Michigan law does

not permit plaintiffs to bring class actions for statutory damages in Michigan state

court unless the statute explicitly authorizes the class device—which the PPPA

does not and did not, even before it was amended.  MCR 3.501(A)(5).  As a result,

the Rentolas filed their purported class action under this Michigan statute in federal

court because the identical class action could not proceed in Michigan state court.[9]

---

[8] All potential class members here were also members of the failed *Horton* class*;* only subscribers who agreed to arbitrate and waive class actions are removed.

[9] *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co*., 559 U.S. 393 (2010), created this loophole when it found that Rule 23 permits a federal court sitting in diversity to entertain a class action based on an alleged violation of a state statute, even if that state's rules would not permit such an action.  *See Boelter v. Advance Magazine Publishers, Inc.*, 210 F. Supp. 3d 579, 591 (S.D.N.Y. 2016) (discussing how PPPA plaintiffs can gain class status to evade MCR 3.501(A)(5)).

## ARGUMENT

I. **The Rentolas' Claims are Untimely and Should Be Dismissed Pursuant to Federal Rule of Civil Procedure 12(b)(6).**

"[A] complaint can be dismissed as barred by the applicable statute of limitation under Fed. R. Civ. P. 12(b)(6) when the statement of the claim affirmatively shows that the plaintiff can prove no set of facts that would entitle him to relief." *Ott v. Midland-Ross Corp.*, 523 F.2d 1367, 1369 (6th Cir. 1975); *see also New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).

The Rentolas' complaint is based on alleged PPPA violations occurring only between May 4, 2015 and July 30, 2016.  (Compl. ¶ 1.)  The Complaint does not allege any violations occurring after July 30, 2016 (presumably because, as discussed above, only actual damages are available for any violations occurring after that date, and plaintiffs have neither suffered nor pled any actual damages to themselves or the putative class).  The three-year statute of limitations applicable to PPPA actions ran out on July 30, 2019.  *See, e.g.*, *Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172, 187 (S.D.N.Y. 2017).  The Rentolas did not bring this claim until June 16, 2020, nearly a full year later.

Given that this action is *prima facie* untimely, the Rentolas seek to rely on the class action tolling doctrine, adopted under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), to prolong the expiration of the limitation period that

9

otherwise bars their class claims.  However, the Rentolas blew the extra time they had under *American Pipe*.  This action is time-barred and should be dismissed on that basis alone.  Furthermore, following the Supreme Court's decision in *China Agritech*, 138 S. Ct. 1800 (2018), such tolling would only operate to toll the time of an *individual* claim; it does not toll the time to bring a successive class action, like this action.  Thus, even if the Michigan COVID administrative tolling order Plaintiffs try to wield could be applied in this federal court (and it cannot), only their individual claims would remain viable under *China Agritech*.  Thus, at a minimum, all class allegations should be stricken from the complaint pursuant to F.R.C.P. 12(f), 12(b)(6), and 23(d)(1)(D), and this Court should dismiss the remaining individual claims.

### A.   Class Action Tolling Does Not Save Plaintiffs' Untimely Claims.

#### 1.   Michigan State Law Tolling Rules Model *American Pipe* Federal Tolling Principles.

The Supreme Court introduced the class action tolling doctrine in *American Pipe*, holding that "the commencement of the original class suit tolls the running of the statute [of limitations] for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status."  414 U.S. at 553.  The Supreme Court later expanded this doctrine in *Crown, Cork & Seal Co. v. Parker* by removing the requirement that purported class members move to intervene in order to qualify for tolling.  462 U.S. 345

10

(1983).  Instead, the Court held that class action tolling applies to putative class members who, once the initial suit fails to achieve class status, "choose to file their own suits or to intervene as plaintiffs in the pending action."  *Id.* at 354.

The doctrine is intended to balance a putative class member's right to pursue their claim if the class is not ultimately certified against the defendant's right to be free from stale claims.  *Am. Pipe*, 414 U.S. at 553-54.  Taking those considerations together, the doctrine "best serves the principal purposes of the class-action procedure—promotion of efficiency and economy of litigation" because without it, putative class members would need to file duplicative, preemptive, suits in order to protect their claims in the event the class was not ultimately certified.  *Cowles v. Bank West*, 476 Mich. 1, 18 (2006) (discussing the policy behind *American Pipe*).

Michigan law codifies the *American Pipe* doctrine at MCR 3.501(F), which is "modeled after" *American Pipe*.  *Cowles*, 476 Mich. at 15.  And the Michigan Supreme Court accordingly has looked to federal cases, such as *Crown, Cork & Seal*, for guidance in analyzing MCR 3.501(F).  *Id.* at 18, 22, 30 (noting its interpretation of that rule was "consistent with *American Pipe* and its progeny").

2.   **The Rentolas' Class Claims Are Untimely Even With The Benefit Of *American Pipe* Tolling.**

Any tolling based on *Horton* does not make this class action timely.  *Horton* was filed on May 4, 2018, seeking to certify a class of Michigan subscribers to *The Wall Street Journal*, and alleging PPPA violations occurring between May 4, 2015,

11

and July 30, 2016.  (*Horton* Compl., Ex. 1).  That filing paused the clock on the three-year statute of limitations running against putative class members' PPPA claims, including the claims now being pursued by the Rentolas.  At that point (on May 4, 2018), 453 days remained of the three-year statute of limitations on statutory damage-based PPPA claims, which expired on July 30, 2019.

*Horton* was dismissed on February 27, 2019.  Upon that dismissal, the statute of limitations began to run again for any claims that were tolled by *Horton*. MCR 3.501(F)(3) ("The statute of limitations resumes running against class members other than representative parties and intervenors . . . (e) on final disposition of the action."); *see Collins v. Vill. Of Palatine*, 875 F.3d 839, 840 (7th Cir. 2017) (*American Pipe* tolling ends, and statute of limitations resumes, "immediately when a class-action suit is dismissed—with or without prejudice— before the class is certified.").[10]  Accordingly, as of February 27, 2019, the date of dismissal in *Horton*, the 453 day clock started ticking for *Horton*'s putative class

---

[10] The fact that *Horton* was appealed does not delay the resumption of the statute of limitations against the *Horton* class members' individual claims.  MCR 3.501(F)(3) expressly addresses this: "If the circumstance that brought about the resumption of the running of the statute [here, the February 27, 2019, dismissal] is superseded by a further order of the trial court, by reversal on appeal, or otherwise [which did not happen here, as the *Horton* plaintiff lost on appeal] the statute of limitations shall be deemed to have been tolled continuously from the commencement of the action."  *See also Collins*, 875 F.3d at 843 (the "consensus view among the circuits" is that once the initial action is dismissed, "the limitations clock *immediately* starts ticking again" despite the pendency of an appeal).

12

members, such as the Rentolas, to file their claims.  That extra time on the clock

expired on May 26, 2020.  The Rentolas did not file their complaint until June 16,

2020.  It is untimely, and should be dismissed.

### 3.     Successive Class Actions Are Not Tolled In Any Event.

Even if the extra time on the clock under *American Pipe* tolling had not

expired for Plaintiffs' claims, at most only their *individual* claims would have

survived following the Supreme Court's decision in *China Agritech*, which made

clear that "*American Pipe* does not permit a plaintiff who waits out the statute of

limitations to piggyback on an earlier, timely filed class action."  138 S. Ct. at

1806.  The Court found that *American Pipe* and *Crown, Cork & Seal* only

addressed tolling for putative class members who choose to sue "individually"

after the initial class action was unsuccessful.

In so ruling, the Court in *China Agritech* reviewed the policy rationales

undergirding the class action tolling doctrine, and in finding they did not support

tolling of successive *class* actions, reasoned:  "The 'efficiency and economy of

litigation' that support tolling of individual claims do not support maintenance of

untimely successive class actions . . . ."  *Id.* at 1806.  An alternative reading

> would allow the statute of limitations to be extended time and again;
> as each class is denied certification, a new named plaintiff could file a
> class complaint that resuscitates the litigation. . . . [T]olling for
> successive class actions could allow lawyers seeking to represent a
> plaintiff class [to] extend the statute of limitations almost indefinitely

13

> until they find a district court judge who is willing to certify the class .
> . . allow[ing] plaintiffs limitless bites at the apple.

*Id.* at 1808 (quotations omitted). Limiting class action tolling to successive

individual actions properly balances the judicial economy gained by limiting

a multiplicity of filings and the finality afforded to defendants by statutes of

limitations. "The watchwords of *American Pipe* are efficiency and economy

of litigation. . . . Extending *American Pipe* tolling to successive class

actions does not serve that purpose." *Id*. at 1811.

This endless piggybacking of class claims that so concerned the Supreme

Court is precisely what Plaintiffs' counsel is trying to do here with new Plaintiffs

in the *Rentola* action following their unsuccessful *Horton* action. Had the Rentolas

come forward with their proposed class claims at the outset of the *Horton* action,

the district court there would have had the opportunity to compare the classes,

assess each potential plaintiff's suitability to serve as class representative, and

create subclasses as needed. *Horton* was unsuccessful because the lead plaintiff

entered into a subscriber agreement forfeiting the right to bring a class action in

court. *See Horton*, 2019 WL 952314 at *2. Instead of dismissing the action

entirely, the court would have been able to allow the Rentola class—which

excludes any individual who entered into the subscriber agreement (Compl. ¶

51)—to move forward in the same action, better serving the purposes of judicial

economy that motivates the class device. *China Agritech*, 138 S. Ct. at 1809 n.5.

Michigan state courts have yet to interpret MCR 3.501(F) in light of *China Agritech*.  However, given Michigan's expressed intention to interpret that rule consistent with *American Pipe* and its progeny, as well as Michigan's consistent practice of looking to federal case law interpreting and developing *American Pipe* to serve as an interpretative aid to its own rules, *see Cowles*, 476 Mich. at 30, MCR 3.501(F) should be interpreted to encompass the limitation on class action tolling to individual actions as expressed in *China Agritech*.

4.     **The Limitation On Tolling Of Successive Class Actions Is Broad And Applies Regardless Of How The Prior Action Terminated.**

That the Rentolas' class claims are not entitled to class action tolling does not depend on how, and on what basis, the *Horton* action failed to achieve class status.  Some courts have limited *China Agritech* to situations where the prior action reached a decision on class certification—rather than being dismissed somewhere else along the way.  *See, e.g.*, *Betances v. Fischer*, 403 F. Supp. 3d 212 (S.D.N.Y. 2019).  However, the *China Agritech* Court made no such distinction. Rather, as other district courts have held, the Supreme Court repeatedly proclaimed its holding in broad terms "that were in no way qualified based on how the prior class action lawsuit was resolved."  *Practice Mgmt. Support Servs. v. Cirque Du Soleil Inc.*, 2018 WL 3659349, at *4 (N.D. Ill. Aug. 2, 2018) (Ex. 5) (quoting *China Agritech*, 138 S. Ct. at 1804, 1806, 1811 ("*American Pipe* does not permit

the maintenance of a follow-on class action past expiration of the statute of limitations.").)  Indeed, China Agritech expressly rejected a more limited approach.  "Justice Sotomayor advocated for 'a more tailored approach,' such as holding that 'tolling only becomes unavailable for future class claims where class certification is denied for a reason that bears on the suitability of the claims for class treatment.'  Instead, as Justice Sotomayor explained, the majority adopted 'a blanket no-tolling-of-class-claims-ever rule." *Id*. at \*12 (quoting China Agritech, 138 S. Ct. at 1814 (Sotomayor, J., concurring)).

As the court notes in *Practice Management*, the Supreme Court's two policy rationales for distinguishing between successive individual and class actions do not "depend on class certification having been decided in the predecessor class action." *Id.* at \*4.  First, the benefit of having potential class representatives "come forward" early so the district court can pick the best lead plaintiff would be undermined if plaintiffs' counsel could "voluntarily dismiss a case at any time prior to a class certification decision and re-file with a new representative." *Id.* (quoting 138 S. Ct. at 1807).  Further, this approach would allow an infinite succession of class suits, upending the balance between judicial economy and a defendant's right to finality. *See id.*

Accordingly, the fact that *Horton* did not reach the class certification stage should not impact the tolling analysis for the Rentolas; and even if they had not

16

blown through the extra time provided under *American Pipe* (or could invoke new

Michigan COVID-related administrative tolling orders as discussed below), all that

would remain is their individual claims, which do not belong in federal court.

### B.   The Michigan State COVID-19 Administrative Orders Do Not Apply Here.

As Plaintiffs' counsel admitted during the parties' pre-motion conference

prior to this Motion, Plaintiffs apparently take the position that their putative

federal class action Complaint is timely based on the administrative orders issued

by the Michigan Supreme Court that extended deadlines for the commencement of

civil actions brought in the Michigan courts because of COVID-19.  *See* Michigan

Supreme Court Administrative Order 2020-3 and Administrative Order 2020-18

(attached here as Exs. 6 & 7, respectively) (together, the "Michigan COVID

Administrative Orders").[11]  According to the Rentolas' theory, the statute of

limitations would have stopped running against their claims on March 10, 2020.

The Michigan COVID Administrative Orders have no application to the

class action complaint Plaintiffs chose to bring *in federal court* and cannot

resuscitate this time-barred action.  To be clear:  nothing was preventing the

---

[11] The Michigan COVID Administrative Orders excluded any day falling during the state of emergency declared by the Governor of Michigan from being included for purposes of Michigan Court Rule 1.108(1), which governs the computation of time for periods "prescribed or allowed" by the Michigan Court Rules.  *Id.*; MCR 1.108(1).  Michigan's State of Emergency was declared on March 10, 2020, and the Michigan COVID Orders were rescinded on June 20, 2020.  (Ex. 7).

Rentolas from seeking redress on an individual basis in Michigan state court, and if they had done so they could have claimed the benefit of the Michigan COVID Administrative Orders.  But that is not what they did:  they elected to file this case in federal court specifically to *avoid* Michigan's express bar to PPPA class claims. *See Boelter*, 210 F. Supp. 3d at 591.  The Michigan COVID Administrative Orders do not apply to extend the statute of limitations applicable to this action in federal court.  And having abjured a state court remedy in favor of a class action that the state courts would forbid, Plaintiffs cannot ask this Court to excuse their delay based on the Administrative COVID Orders issued by the very same state courts.

Neither this Court nor the Sixth Circuit have issued any administrative orders pausing or extending deadlines for the commencement of actions due to COVID-19.[12]  Not only do the Michigan COVID Administrative Orders have no bearing on the realities of litigation in the federal courts, they have no application here as a matter of law.  Plaintiffs "seem[] to be under the mistaken impression that this Court is legally *compelled* to follow . . . an administrative order issued by the

---

[12] In contrast to federal courts (and this Court in particular), not every Michigan state trial court has the capacity to accept e-filings.  (*See* list of E-Filing Courts in Michigan, updated July 16, 2020, from the Michigan state court official site, Ex. 8.)  It made good sense for the Michigan state courts to pause statutes of limitations for initiation of actions therein, as many litigants would have had no option but to file their actions in person, putting themselves, the judiciary, court staff, and the public, at risk.  The same logic does not apply to the initiation of actions in federal courts, which remained open to new e-filings (just as this case was filed).

Michigan Supreme Court" when "this Court clearly is not bound by such state court administrative orders and rules." *Burkholder v. Lenawee County Road Comm'n*, 905 F. Supp. 421, 428 n.8 (E.D. Mich. 1995) (Rosen, J). *See, e.g.*, *Spelta v. Bakker*, 2020 WL 2732070 (D. Md. May 26, 2020) (rejecting party's reliance on "orders entered by the Chief Judge of the Court of Appeals of Maryland, pursuant to emergency authority, tolling certain time periods, including statutes of limitations" due to the COVID crisis, noting that the "orders applicable in this [federal] court, however, explicitly did not extend any statute of limitations"; removal petition held untimely) (Ex. 9).

By their terms, the Michigan COVID Administrative Orders do not interpret or purport to alter or amend the applicable statute of limitations; they instead simply provide that "for purposes of" the Michigan Court Rules governing computation of time (MCR 1.108), "any day that falls during the state of emergency declared by the Governor related to COVID-19 is not included. . . ." (Ex. 6.) "The Michigan Court Rules govern practice and procedure in *all courts established by the constitution and laws of the State of Michigan*" (MCR 1.103) (emphasis added)—not in federal court.

In short, the administrative Michigan COVID Orders are internal operating procedures for the Michigan state judiciary born of extraordinary circumstances specific to that state court system. They are neither germane to nor binding on

federal courts, and Plaintiffs' attempt to rely on them—while skirting those parts of the Michigan judicial rules that would doom their class action—is pure gamesmanship that should not be rewarded but condemned.  Indeed, having rejected the state forum, Plaintiffs should be estopped from attempting to inconsistently rely on state court administrative orders to prop up their time-barred federal class action.  *See, e.g.*, *Han v. Hankook Tire Co.,* 799 F. App'x 347, 349 (6th Cir. 2020) (party advocating inconsistent positions can be judicially estopped "to prevent that party from playing 'fast and loose' with the courts") (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598–99 (6th Cir. 1982)).

## II.    In The Alternative, And At Minimum, The Court Should Strike Or Dismiss The Class Allegations And Dismiss This Action, Or If Not Dismissed, Limit The Plaintiffs' Alleged Period Of Recovery.

In *all* events—even if the Michigan COVID Administrative  Orders applied (and they should not)—for the reasons explained above under *China Agritech* successive class actions are barred and only the named plaintiffs' *individual* claims would remain.  Accordingly, the Rentolas' purported class claims should be stricken.  Further, once the class claims fall away leaving only the Rentolas' individual $5,000 Michigan state law claims (and the initial basis for subject matter jurisdiction through CAFA no longer exists), this Court should decline to retain or exercise jurisdiction over the individual claims, and should dismiss them without prejudice for consideration in state court.  *See Horton*, 804 Fed. App'x at 85

20

(affirming trial court's decision to dismiss individual PPPA claim when plaintiff could not pursue a class; federal courts need not "'adjudicate state law claims'" upon a "'finding that a case cannot proceed as a class action'") (quoting *F5 Capital v. Pappas*, 856 F.3d 61, 77 n.14 (2d Cir. 2017)).  This is particularly appropriate here given that the class claims were time barred and deficient at the outset.

And even if this Court retained the Rentolas' individual claims, they would be subject to a very short time period even with the benefit of the Michigan COVID Administrative Orders.  Specifically, only 76 days remained under the statute of limitations when the Michigan COVID Orders went into effect on March 10, 2020.  As discussed above, when *Horton* was dismissed on February 27, 2019—and the statute of limitations resumed running against putative class members' claims—453 days remained under the three-year statute of limitations for claims based on the old PPPA.  (*See* § A.2, *supra*).  As of March 10, 2020—the date when (under Plaintiffs' theory) the statute of limitations was again paused—378 days had elapsed since the *Horton* dismissal.  At that point, *Horton*'s putative class members would have had 76 days remaining before their individual claims expired.

Accordingly, in the alternative and at minimum, the Court should rule Plaintiffs' individual claims are limited to alleged violations during the 76-day period ranging from May 16, 2016 to July 30, 2016.[13]

Finally, if for any reason this Court permits Plaintiffs to move forward—which it should not—the putative class should be limited to the 76 days remaining before the claims expired. In such case, the Court should strike the class allegations as currently pled[14] and direct the Rentolas to amend their class allegations to a period ranging from May 16, 2016, to July 30, 2016.

---

[13] The 76 days is calculated as follows: *Horton* provided 300 days of tolling to the Rentolas—from 5/4/2018 (the date of *Horton* filing) to 2/27/19 (date of *Horton* dismissal). The SOL started to run again on 2/28/19. If given the benefit of the Michigan COVID Administrative Orders, on March 10, 2020, the statute of limitations was paused again. As of March 10, 2020, 224 days had expired, leaving only 76 days on the clock. Due to the three-year statute of limitations for statutory PPPA claims, that means the 76 day remaining period would extend backwards from July 30, 2016 (the day prior to the effective date of the PPPA amendment) to May 16, 2016. Only alleged violations of the PPPA during that period would be timely.

[14] *See* Fed. R. Civ. P. 23(d)(1)(D) (authorizing a court overseeing a putative class action to "require that pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly"). This is what the Court did with the remaining class claims in (a pre-*China Agritech* case), *Boelter v. Hearst Communications*, 269 F. Supp. 3d at 189 (prior class action filed on September 24, 2012, and dismissed 883 days later on February 23, 2015; class period in later class action could only cover time remaining under statute of limitations, not full class period alleged in prior action).

III.    **Plaintiffs' Unjust Enrichment Claim Also Fails As A Matter Of Law.**

Plaintiffs' individual unjust enrichment claim should be dismissed for all the

reasons discussed above.[15]  In addition, this claim fails for independent reasons.

*First*, the unjust enrichment claim depends on the notion that the price

Plaintiffs paid for their subscriptions included a premium for non-disclosure of

Plaintiffs' newspaper subscription information, such that they were denied the full

benefit of their subscription fees.  (*See, e.g.*, Compl. ¶ 90.)  However, that

purported expectation is only based on the PPPA's purported prohibition on

disclosure of subscription information.  (*See id*.)  But Plaintiffs do not and could

not allege that they were charged more than non-Michigan subscribers, or that

Defendant would have charged less for the subscription if the PPPA did not exist,

nor can they plausibly allege that their subscription information has intrinsic

monetary value.[16]  At bottom, the Complaint fails to allege any unjust benefit that

---

[15] Unjust enrichment claims also are subject to the same three-year statute of limitations as the PPPA, because that is the gravamen of the claim.  *See PCA Minerals, LLC v. Merit Energy Co.*, 725 Fed. App'x 342, 348 (6th Cir. 2018) ("When an unjust-enrichment claim is not based on an analogous contract claim, but on a different legal claim, Michigan courts will apply the statute of limitations applicable to that claim.").  In fact, if anything, the unjust enrichment claims are even more untimely, as they were strategically abandoned in *Horton* at the outset of that case, long before the PPPA claims were dismissed by the court.  (*Compare Horton* Compl., Ex. 1 ¶¶ 86-96 *with Horton* 1st Am. Compl., Ex. 4.)

[16] *Cf. In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 525 (S.D.N.Y. 2001) ("[W]e are unaware of any court that has held the value of this collected [demographic] information constitutes damage to consumers or unjust enrichment to collectors.").

23

Defendants received here: Plaintiffs paid for newspapers; Plaintiffs received newspapers. *See, e.g.*, *Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231, 1249 (D. Colo. 2018) (rejecting unjust enrichment claim based on overpayment or "would not have shopped" theory because "Plaintiffs paid for burritos; Plaintiffs received burritos").

*Second*, Plaintiffs' unjust enrichment claim is an equitable remedy that is entirely duplicative of their PPPA claim, which provides them full, complete and more than adequate relief. *E.g. Pacheco v. Boar's Head Provisions Co.*, 2010 WL 132385, *4-5 (W.D. Mich. Mar. 30, 2010) (when plaintiff sought same relief under both FLSA and unjust enrichment and had not suggested "that they do not have a full, complete, and adequate remedy at law under the FLSA," there was no basis for "bringing an independent action for equitable relief") (Ex. 10).[17]  Plaintiffs' unjust enrichment claims are premised on, and subsumed within, the statutory

---

[17] While this basis for dismissal is different than a preemption argument, Dow Jones respectfully submits that since any privacy interest in non-disclosure of Plaintiffs' subscription information is explicitly covered by the PPPA, the PPPA also should be deemed to preempt Plaintiffs' unjust enrichment claim under Michigan law. *Kraft v. Detroit Ent'mnt, LLC*, 261 Mich. App. 534, 545 (2004) (where "comprehensive legislation prescribes in detail a course of conduct to pursue and the parties and things affected . . . common law dealing with the subject matter" is preempted).  Dow Jones recognizes that this court and others have rejected similar preemption arguments, *e.g. Perlin v. Time Inc.*, 237 F. Supp. 3d 623, 644 (E.D. Mich. 2017), though no Michigan state court has weighed in on whether the PPPA supersedes common law unjust enrichment claims, and Dow Jones seeks to preserve that independent basis for dismissal.

claim; Plaintiffs do not, and could not, allege damages beyond the statutory amount, and they have not identified any element of their claim that can be uniquely redressed through equitable relief.

In short, Plaintiffs either have a claim under the PPPA for allegedly improper disclosure of their PRI (in which case the PPPA provides them with a complete and adequate remedy), or they do not (in which case, Dow Jones cannot have been unjustly enriched under Plaintiffs' theory). For this additional reason, Plaintiffs' duplicative equitable claim for unjust enrichment must be dismissed.

## CONCLUSION

In sum, for multiple reasons, this purported successive class action is time-barred and cannot survive. Moreover, even were the Court to find Plaintiffs could hang on to their individual claims, those claims do not belong in this Court. Accordingly, this Court should dismiss the Complaint in its entirety.

Dated: August 17, 2020                    Respectfully submitted,

                                          s/ *Natalie J. Spears*

                                          *Counsel for Defendant Dow Jones &*
                                          *Company, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on August 17, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

<u>*s/ Natalie J. Spears*</u>

Natalie J. Spears