## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CHRISTOPHER RENTOLA and SHERREE RENTOLA, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiffs,<br><br>　v.<br><br>DOW JONES & COMPANY, INC., a Delaware corporation,<br><br>　　　　　　　　Defendant. | Case No. 4:20-cv-11589-SDD-EAS<br><br>Hon. Stephanie Dawkins Davis<br><br>Mag. Judge Elizabeth A. Stafford |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S
## <u>MOTION TO DISMISS</u>

Dated: September 8, 2020

**BURSOR & FISHER, P.A.**
Joseph I. Marchese
Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: jmarchese@bursor.com
　　　　　pfraietta@bursor.com

**HEDIN HALL LLP**
Frank S. Hedin
1395 Brickell Ave., Suite 1140
Miami, FL 33131
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
E-Mail: fhedin@hedinhall.com

**BARBAT, MANSOUR & SUCIU PLLC**
Nick Suciu III
6905 Telegraph Road, Suite 115
Bloomfield Hills, Michigan 48301
Tel: 313.303.3472
E-Mail: nicksuciu@bmslawyers.com

*Counsel For Plaintiffs*

## STATEMENT OF ISSUES PRESENTED

1. Whether the statute of limitations for Plaintiffs' claims were tolled pursuant to MCR 3.501(F) until all appeals were exhausted in *Horton v. Dow Jones*, No. 18-cv-04027 (S.D.N.Y.)?

   **Plaintiff's Answer: Yes.**

2. Whether Michigan's Executive and Administrative Orders tolling the statute of limitations for all Michigan claims due to COVID-19 tolled the statute of limitations for Plaintiffs' claims?

   **Plaintiff's Answer: Yes.**

3. Whether *China Agritech* precludes Plaintiffs from proceeding on a class basis, even under Michigan law?

   **Plaintiff's Answer: No.**

4. Whether Plaintiffs' claims for unjust enrichment fail?

   **Plaintiff's Answer: No.**

## CONTROLLING AND MOST IMPORTANT AUTHORITY

**SUPREME COURT CASES:**

*China Agritech v. Resh*,
  138 S. Ct. 1800 (2018)

*Coblentz v. City of Novi*,
  475 Mich. 558 (2006)

*Cowles v. Bank West*,
  476 Mich. 1 (2006)

*Erie R.R. Co. v. Tompkins*,
  304 U.S. 64 (1938)

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*,
  559 U.S. 393 (2010)

*Straus v. Governor*,
  459 Mich. 526 (1999)

**COURT OF APPEALS CASES:**

*Colvin v. Detroit Entertainment, L.L.C.*,
  2011 WL 2586321 (Mich. Ct. App. June 30, 2011)

*Fambro v. Henry Ford Health System*,
  2006 WL 707483 (Mich. Ct. App. Mar. 21, 2006)

*Hill v. City of Warren*,
  276 Mich. App. 299 (2007)

*Karaus v. Bank of New York Mellon*,
  300 Mich. App. 9 (2012)

*Warren Consol. Schools v. W.R. Grace & Co.*,
  250 Mich. App. 580 (1994)

**TRIAL COURT CASES:**

*Beaulier v. Ford Motor Co.*,
  2008 WL 5203958 (Mich. Cir. Ct. Jan. 28, 2008)

*Betances v. Fischer*,
  403 F. Supp. 3d 212 (S.D.N.Y. 2019)

*Boelter v. Advance Magazine Publishers Inc.*,
  210 F. Supp. 3d 579 (S.D.N.Y. 2016)

*Boelter v. Hearst Commn'cns, Inc.*,
  269 F. Supp. 3d 172 (S.D.N.Y. 2017)

*Fidelity and Guar. Ins. Underwriters, Inc. v. Allstate Roofing and Paving*,
  2008 WL 2364279 (E.D. Mich. May 28, 2008)

*Hart v. BHH, LLC*,
  2018 WL 5729294 (S.D.N.Y. Nov. 2, 2018)

*Kinder v. Meredith Corp.*,
  2014 WL 4209575 (E.D. Mich. Aug. 26, 2014)

*Moeller v. Am. Media, Inc.*,
  235 F. Supp. 3d 868 (E.D. Mich. 2017)

*Owens v. Rodale, Inc.*,
  2015 WL 575004 (E.D. Mich. Feb. 11, 2015)

*Perlin v. Time Inc.*,
  237 F. Supp. 3d 623 (E.D. Mich. 2017)

**OTHER AUTHORITIES:**

Michigan Preservation of Personal Privacy Act, M.C.L. § 445.1711, *et seq.*

MCR 3.501

Mich. Executive Order 2020-58

Mich. Supreme Court Administrative Order 2020-3

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ................................................................................. 1

BACKGROUND ................................................................................... 2

    A.   Michigan's Preservation of Personal Privacy Act .............................. 2

    B.   The *Horton* Action ............................................................. 3

    C.   Plaintiffs' Allegations ......................................................... 4

ARGUMENT ........................................................................................ 6

I.    TOLLING IS A QUESTION OF MICHIGAN LAW.................................... 6

II.   PLAINTIFFS' CLAIMS WERE TOLLED UNDER MICHIGAN LAW ..... 6

    A.   Plaintiffs' Claims Were Tolled By MCR 3.501(F) Until "Final Disposition," The Date Upon Which All Appeals In *Horton* Were Exhausted ...................................................................... 7

    B.   Plaintiffs' Claims Were Also Tolled By Michigan's COVID-19 Executive And Administrative Orders Related To Statutes Of Limitation .................................................................... 16

III.  *CHINA AGRITECH* IS INAPPLICABLE.................................................... 20

    A.   The Michigan Supreme Court Expressly Declined To Implement A Rule Barring Successive Class Actions ......................................... 20

    B.   *China Agritech* Does Not Bar Successive Class Actions Where The Initial Action Was Dismissed Prior To A Decision On Class Certification................................................................. 22

IV.  PLAINTIFFS STATE A CLAIM FOR UNJUST ENRICHMENT............. 24

CONCLUSION.................................................................................... 25

# TABLE OF AUTHORITIES

**PAGE(S)**

## SUPREME COURT CASES:

*Annandale Advocate v. City of Annandale,*
    435 N.W.2d 24 (Minn. 1989) .............................................................................. 12

*China Agritech v. Resh,*
    138 S. Ct. 1800 (2018)........................................................................ 20, 21, 22, 23

*Coblentz v. City of Novi,*
    475 Mich. 558 (2006) ................................................................................... 13, 14

*Cowles v. Bank West,*
    476 Mich. 1 (2006) ........................................................................... 7, 20, 21, 24

*Erie R.R. Co. v. Tompkins,*
    304 U.S. 64 (1938) ............................................................................................ 6

*Ex Parte Russell,*
    80 U.S. 664 (1871) ........................................................................................... 11

*Grievance Adm'r v. Underwood,*
    462 Mich. 188 (2000) ...................................................................................... 13

*Macomb County Prosecutor v. Murphy,*
    464 Mich. 149 (2001) ...................................................................................... 15

*People v. Peltola,*
    489 Mich. 174 (2011) ...................................................................................... 14

*People v. Tennyson,*
    487 Mich. 730 (2010) ...................................................................................... 11

*Quarture v. Allegheny Cnty.,*
    14 A.2d 575 (Pa. Sup. Ct. 1940).......................................................................... 12

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.,*
    559 U.S. 393 (2010) ...................................................................................... 7, 19

*State ex rel. Schatz v. McCaughtry*,
    664 N.W.2d 596 (Wis. 2003) ............................................................ 12

*Straus v. Governor*,
    459 Mich. 526 (1999) ................................................................. 17, 20

*Wallace v. Kato*,
    549 U.S. 384 (2007) ...................................................................... 6

## COURT OF APPEALS CASES:

*Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*,
    898 F.3d 710 (6th Cir. 2018) ......................................................... 22

*Badzio v. Americare Certified Special Servs., Inc.*,
    177 A.D.3d 838 (N.Y. App. Div. 2019) ............................................. 23

*Beaulier v. Ford Motor Co.*,
    2008 WL 4367541 (Mich. Ct. App. Sept. 25, 2008) ......................... 10

*Blaha v. A.H. Robins & Co.*,
    708 F.2d 238 (6th Cir. 1983) ........................................................... 6

*Collins v. Vill. of Palatine*,
    875 F.3d 839 (7th Cir. 2017) ......................................................... 13

*Colvin v. Detroit Entertainment, L.L.C.*,
    2011 WL 2586321 (Mich. Ct. App. June 30, 2011) ........................... 9

*Dorsey v. City of Detroit*,
    858 F.2d 338 (6th Cir. 1988) ......................................................... 18

*Fambro v. Henry Ford Health System*,
    2006 WL 707483 (Mich. Ct. App. Mar. 21, 2006) ............................. 9

*Hill v. City of Warren*,
    276 Mich. App. 299 (2007) ........................................................... 15

*Horton v. Dow Jones & Company, Inc.*,
    804 F. App'x 81 (2d Cir. 2020) .................................................... 4, 5

*Karaus v. Bank of New York Mellon*,
   300 Mich. App. 9 (2012) ................................................................... 24

*In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*,
   756 F.3d 917 (6th Cir. 2014) ............................................................... 6

*Scafar Contracting, Inc. v. Secretary of Labor*,
   325 F.3d 422 (3d Cir. 2003 ) ............................................................. 11

*Smith v. Hilliard*,
   578 F. App'x 556 (6th Cir. 2014) ........................................................ 6

*Warren Consol. Schools v. W.R. Grace & Co.*,
   250 Mich. App. 580 (1994) .................................................................. 9

## TRIAL COURT CASES:

*Beaulier v. Ford Motor Co.*,
   2008 WL 5203958 (Mich. Cir. Ct. Jan. 28, 2008) ............................. 10

*Betances v. Fischer*,
   403 F. Supp. 3d 212 (S.D.N.Y. 2019) ................................................ 23

*Boelter v. Advance Magazine Publishers Inc.*,
   210 F. Supp. 3d 579 (S.D.N.Y. 2016) .................................................. 7

*Boelter v. Hearst Commn'cns, Inc.*,
   269 F. Supp. 3d 172 (S.D.N.Y. 2017) ................................... 2, 6, 7, 19

*Brown v. City of New Orleans*,
   2007 WL 2480984 (E.D. La. Aug. 30, 2007) ..................................... 17

*Burkholder v. Lenawee County Road Comm'n*,
   905 F. Supp. 421 (E.D. Mich. 1995) .................................................. 18

*Carrol v. Gusman*,
   2009 WL 2949997 (E.D. La. Sept. 10, 2009) ..................................... 17

*Famular v. Whirlpool Corp.*,
   2019 WL 1254882 (S.D.N.Y. Mar. 19, 2019) ..................................... 22

*Fidelity and Guar. Ins. Underwriters, Inc. v. Allstate Roofing and Paving*,
2008 WL 2364279 (E.D. Mich. May 28, 2008) ................................................. 11

*Hart v. BHH, LLC*,
2018 WL 5729294 (S.D.N.Y. Nov. 2, 2018) ..................................................... 23

*Horton v. Dow Jones & Company, Inc.*,
2019 WL 952314 (S.D.N.Y. Feb. 27, 2019) ................................................. 3, 21

*Horton v. GameStop Corp.*,
380 F. Supp. 3d 679 (W.D. Mich. 2018) ........................................................... 2

*In re Snap Inc. Sec. Litig.*,
334 F.R.D. 209 (C.D. Cal. 2019) .................................................................... 23

*Irrer v. Milacron, Inc.*,
2006 WL 2669197 (E.D. Mich. Sept. 18, 2006) ............................................... 9

*Kinder v. Meredith Corp.*,
2014 WL 4209575 (E.D. Mich. Aug. 26, 2014) .............................................. 24

*Moeller v. Am. Media, Inc.*,
235 F. Supp. 3d 868 (E.D. Mich. 2017) ......................................................... 25

*Owens v. Rodale, Inc.*,
2015 WL 575004 (E.D. Mich. Feb. 11, 2015) ................................................. 25

*Perlin v. Time Inc.*,
237 F. Supp. 3d 623 (E.D. Mich. 2017) ......................................................... 25

*Practice Mgmt. Support Servs. v. Cirque Du Soleil Inc.*,
2018 WL 3659349 (N.D. Ill. Aug. 2, 2018) .................................................... 23

*Spelta v. Bakker*,
2020 WL 2732070 (D. Md. May 26, 2020) ...................................................... 18

*Sun-Times Media Grp., Inc. v. Black*,
954 A.2d 380 (Del. Ch. 2008) ....................................................................... 12

## STATUTES

Michigan Preservation of Personal Privacy Act,
   M.C.L. § 445.1711, *et seq.* ........................................................... passim

28 U.S.C. § 1446(b) ...................................................................... 18

M.C.L. § 600.5805(10) .................................................................... 2

## RULES

Fed. R. App. P. 40(a)(1) ................................................................. 4

MCR 2.107(B)(1)(c) ....................................................................... 14

MCR 3.211(D)(2)(a) ....................................................................... 14

MCR 3.501 ............................................................................ passim

MCR 7.202(6)(a)(i) ....................................................................... 14

## OTHER AUTHORITIES

Mich. Executive Order 2020-58 ................................................. 16, 17, 19

Mich. Executive Order 2020-122 ..................................................... 17

Mich. Supreme Court Administrative Order 2020-3 ................................ 16, 17, 19

Mich. Supreme Court Administrative Order 2020-18 .................................... 17

S.B. 490, 98th Leg., Reg. Sess., P.A. No. 92 (Mich. 2016) ........................... 2

## <u>INTRODUCTION</u>

This case concerns a straight-forward application of the *Erie* doctrine. Plaintiffs bring claims pursuant to Michigan's Preservation of Personal Privacy Act, M.C.L. § 445.1711, *et seq.* (the "PPPA") and for unjust enrichment based on Defendant having disclosed their Personal Reading Information to third-party data companies without their consent. Complaint (Dkt. 1) ("Compl.") ¶ 1. Defendant does not deny this conduct – nor could it – as it has published an article in its newspaper *The Wall Street Journal*, admitting that it "sells its print-subscriber list to marketers." *Id.* ¶ 3. Instead, Defendant argues that Plaintiffs' claims are time-barred, and are not saved by class action tolling. But in doing so, Defendant resorts to *federal* class action tolling rules, not *Michigan* class action tolling rules. But because this case arises under Michigan law, this Court, sitting in diversity, is required to apply Michigan's class action tolling rules pursuant to *Erie*. An application of Michigan's rules makes clear that Plaintiffs' claims were tolled by: (1) the filing of an earlier putative class action in which Plaintiffs were putative class members; and (2) Michigan's Executive and Administrative Orders tolling the statute of limitations for all Michigan claims due to COVID-19. Plaintiffs' claims remained tolled from the filing of the earlier putative class action, all the way through the filing of this lawsuit. Therefore, the Court must deny Defendant's motion to dismiss as a matter of Michigan law.

1

## BACKGROUND

### A.      Michigan's Preservation of Personal Privacy Act

The Michigan legislature passed the PPPA "to preserve personal privacy

with respect to the purchase, rental, or borrowing of written materials, sound

recordings, and video recordings."  Compl, Ex. A.  As such, the PPPA provides:

> a person, or an employee or agent of the person, engaged
> in the business of selling at retail . . . books or other written
> materials . . . shall not disclose to any person, other than
> the customer, a record or information concerning the
> purchase . . . of those materials by a customer that
> indicates the identity of the customer.

M.C.L. § 445.1712.

To enforce the statute, the PPPA authorizes civil actions and provides for the

recovery of statutory damages in the amount of $5,000, plus costs and reasonable

attorney fees.  *See* M.C.L. § 445.1715.  Claims under the PPPA are subject to a

"three-year statute of limitations."  *Boelter v. Hearst Commn'cns, Inc.*, 269 F.

Supp. 3d 172, 187 (S.D.N.Y. 2017) (citing M.C.L. § 600.5805(10)).

In May 2016, the Michigan legislature amended the statute.  *See* S.B. 490,

98th Leg., Reg. Sess., P.A. No. 92 (Mich. 2016) (codified at Am. PPPA § 1, *et*

*seq*.).  The May 2016 amendment removed the statutory damages provision,

among other changes.  However, the amendment did not become effective until

July 31, 2016.  Am. PPPA § 5(2).  Thus, "the unamended [PPPA] applies to

Plaintiff[s'] claims that accrued prior to July 31, 2016."  *Horton v. GameStop*

*Corp.*, 380 F. Supp. 3d 679, 683 (W.D. Mich. 2018).

### B.    The *Horton* Action

On May 4, 2018, Robert Jeremy Horton filed a substantially identical

putative class action against Defendant in the Southern District of New York.

*Horton v. Dow Jones*, No. 18-cv-04027 (S.D.N.Y.) ("*Horton*").  The *Horton*

Complaint sought "to represent a class defined as all Michigan subscribers who, at

any point in time between May 4, 2015 and July 30, 2016, had his or her Personal

Reading Information disclosed to one or more third parties by Dow Jones without

having provided Dow Jones his or her prior written permission to make such

disclosures."  Def.'s Ex. 1, *Horton* Compl. ¶ 55.  Defendant admits that "[a]ll

potential class members here were also members of the failed *Horton* class."

Defendant's Motion to Dismiss (Dkt. 11) ("MTD") at 8 n.8.

However, on February 27, 2019, the *Horton* district court granted

Defendant's motion to dismiss Mr. Horton's claim because it found that he had

entered into an online subscription agreement with Defendant in which he waived

his ability to proceed on a class basis, thereby depriving the federal court of

subject-matter jurisdiction.  *Horton v. Dow Jones & Company, Inc.*, 2019 WL

952314, at *2-4 (S.D.N.Y. Feb. 27, 2019).  Critically, the *Horton* district court

never reached a decision on class certification, nor was any such motion ever filed.

*Horton*, No. 18-cv-04027 (S.D.N.Y.).  Thereafter, Mr. Horton timely perfected an

appeal of the district court's decision.  *Horton*, No. 19-527 (2d Cir.).  However, on April 1, 2020, the Second Circuit affirmed the decision.  *Horton v. Dow Jones & Company, Inc.*, 804 F. App'x 81 (2d Cir. 2020).  Under the applicable appellate rules, Mr. Horton had until May 6, 2020 to file a petition for rehearing *en banc*, but ultimately did not do so.  Thus, all appeals were not exhausted until May 6, 2020.  *See* Fed. R. App. P. 40(a)(1) ("Unless the time is shortened or extended by order or local rule, a petition for panel rehearing may be filed within 14 days after entry of judgment."); Plfs.' Ex. C; 3/16/20 Second Circuit Order Extending Filing Deadlines Due To COVID-19 ("[A]ll filing and other deadlines set out in the Federal Rules of Appellate Produce … are extended … by 21 days.").  The Second Circuit issued its mandate on May 13, 2020, finally disposing of the *Horton* Action.  *Horton*, No. 19-527, Dkt. 112 (2d Cir.).

### C.    Plaintiffs' Allegations

Plaintiffs Christopher Rentola and Sherree Rentola filed this putative class action on June 16, 2020.  Plaintiffs are Michigan citizens and subscribers to the print edition of *The Wall Street Journal*.  Compl. ¶¶ 10-11.  Plaintiffs allege that "[b]etween May 4, 2015 and July 30, 2016, Defendant … rented, exchanged, and/or otherwise disclosed personal information about [their] *The Wall Street Journal* print newspaper subscriptions to data aggregators, data appenders, data cooperatives, and list brokers, among others, who in turn disclosed their

information to aggressive advertisers, political organizations, and non-profit companies." *Id.* ¶ 1.  "Indeed, on April 13, 2011, Defendant published an article in *The Wall Street* Journal," admitting that "*The Wall Street Journal* sells its prin-subscriber list to marketers for $170 per 1,000 subscribers for each mailing, according to NextMark Inc., which tracks such lists." *Id.* ¶ 3.  Plaintiffs allege that these disclosures violated the PPPA.  *Id.*

"At no time did [Plaintiffs] subscribe to the online edition of *The Wall Street Journal*, nor did [they] ever subscribe to the print edition of *The Wall Street Journal* via online means." *Id.* ¶ 10-11.  Thus, unlike Mr. Horton, Plaintiffs never entered into a "Subscriber Agreement" with Defendant that contained a section titled "Agreement to Arbitrate," and Defendant does not argue otherwise. "Plaintiffs seek to represent a class of all Michigan residents who, at any point in time between May 4, 2015 and July 30, 2016, had their Personal Reading Information pertaining to a print subscription to *The Wall Street Journal* disclosed to a third party by the Defendant without consent … .  Excluded from the Class is any person who has ever entered into a version of the *The Wall Street Journal* "Subscriber Agreement" that contained a section titled "Agreement to Arbitrate" with Defendant, as well as any entity in which Defendant has a controlling interest, and officers or directors of Defendant." *Id.* ¶ 51.

## ARGUMENT

## I.     TOLLING IS A QUESTION OF MICHIGAN LAW

Defendant's brief focuses on class action tolling as a matter of federal law under *American Pipe* and its progeny.  MTD at 10-17.  However, it is black-letter law that "[w]hen sitting in diversity, federal courts are required to apply the substantive law of the states in which they reside."  *In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 937 (6th Cir. 2014) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).  "Pursuant to the *Erie* doctrine, state statutes of limitations must be applied by federal courts sitting in diversity."  *Blaha v. A.H. Robins & Co.*, 708 F.2d 238, 239 (6th Cir. 1983).  "Just as limitations periods are taken from state law, so are the rules regarding tolling."  *Smith v. Hilliard*, 578 F. App'x 556, 562 (6th Cir. 2014) (citing *Wallace v. Kato*, 549 U.S. 384, 394 (2007) ("We have generally referred to state law for tolling rules, just as we have for the length of statute of limitation.")).  Thus, because Plaintiffs' claims arise under Michigan law, Michigan state law – not federal law – governs the tolling analysis.  *See, e.g.*, *Hearst*, 269 F. Supp. 3d at 187-89 (applying Michigan state law and concluding that class action claims under the PPPA were tolled by the filing of an earlier putative class action case).

## II.    PLAINTIFFS' CLAIMS WERE TOLLED UNDER MICHIGAN LAW

Michigan law provides two bases under which Plaintiffs' claims were tolled:

(1) class action tolling pursuant to MCR 3.501(F); and (2) Michigan's COVID-19 Executive and Administrative Orders related to statutes of limitations.  Both are applicable here.

###   A.      Plaintiffs' Claims Were Tolled By MCR 3.501(F) Until "Final Disposition," The Date Upon Which All Appeals In *Horton* Were Exhausted

"Federal district courts both within and outside Michigan have applied M.C.R. 3.501(F) to analyze tolling of Michigan claims."  *Hearst*, 269 F. Supp. 3d at 188 (citing cases).[1]  Pursuant to MCR 3.501(F)(1), "[t]he statute of limitations is tolled as to all persons within the class described in the complaint on the commencement of an action asserting a class action."  MCR 3.501(F)(1); *see also Cowles v. Bank West*, 476 Mich. 1, 31 n.16 (2006) ("The manifest purpose of this provision is to avoid the situation in which each class member must initiate his or her own individual lawsuit to preserve a cause of action.  Thus, class members must be allowed to rely upon the 'assertion' of a class action without having to independently determine that the person asserting it has a right to do so.").

---

[1] Defendant's argument that "[t]his case is only possible due to a loophole under CAFA, as Michigan law does not permit plaintiffs to bring class actions for statutory damages in Michigan state court unless the statute explicitly authorizes the class device," is immaterial.  MTD at 8.  As Defendant acknowledges, "this result has already been recognized as a valid consequence of a uniform system of federal procedure by a majority of the Supreme Court in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010)."  *Boelter v. Advance Magazine Publishers Inc.*, 210 F. Supp. 3d 579, 591 (S.D.N.Y. 2016).

Here, Defendant admits that "[a]ll potential class members here were also members of the failed *Horton* class." MTD at 8 n.8. Thus, there is no question that Plaintiffs enjoyed the benefit of tolling under MCR 3.501(F) during the pendency of *Horton*. The only remaining issue is when did that tolling end?

MCR 3.501(F)(2) provides five conditions upon which the running of the statute of limitations recommences:

(a) on the filing of a notice of the plaintiff's failure to move for class certification under subrule (B)(2);

(b) 28 days after notice has been made under subrule (C)(1) of the entry, amendment, or revocation of an order of certification eliminating the person from the class;

(c) on entry of an order denying certification of the action as a class action;

(d) on submission of an election to be excluded; or

(e) on final disposition of the action.

MCR 3.501(F)(2). Defendant does not argue that conditions (a)-(d) are applicable. Instead, Defendant argues that condition (e) is applicable because "*Horton* was dismissed on February 27, 2019." MTD at 12. But Defendant's argument ignores that Mr. Horton appealed that decision. As aforementioned, the Second Circuit did not affirm the *Horton* dismissal until April 1, 2020, and all appeals did not exhaust until May 6, 2020, when Mr. Horton failed to file a petition for rehearing *en banc*.

*See supra* Background § B.  Contrary to Defendant's argument, it is the date upon which all appeals exhausted (May 6, 2020), not the date upon which the District Court dismissed the action (February 27, 2019) that constitutes "final disposition" and recommences the statute of limitations.

The Court of Appeals of Michigan addressed this issue in *Colvin v. Detroit Entertainment, L.L.C.*, 2011 WL 2586321 (Mich. Ct. App. June 30, 2011).  There, interpreting MCR 3.501(F), the Michigan Court of Appeals noted that "a final disposition of the action … could only be made by our Supreme Court."  *Id.* at *2.  However, because the Court of Appeals had "overturned the trial court's decisions granting class certification in two cases brought by other [class members]," MCR 3.501(F)(2)(c) applied, and the statute of limitations recommenced upon the denial of class certification.  *Id.* at *2-3.  Nonetheless, *Colvin* still supports Plaintiffs' argument that "final disposition" cannot occur until all appeals have exhausted.

Plaintiffs' contention is also supported by Michigan's rule that a putative class member who chooses to "file[] an individual action as opposed to choosing to be a member of the class in the class action," "despite a pending [] class action lawsuit," does not enjoy the benefit of tolling.  *Fambro v. Henry Ford Health System*, 2006 WL 707483, at *2-3 (Mich. Ct. App. Mar. 21, 2006) (citing *Warren Consol. Schools v. W.R. Grace & Co.*, 250 Mich. App. 580, 586 (1994)); *see also Irrer v. Milacron, Inc.*, 2006 WL 2669197, at *7 (E.D. Mich. Sept. 18, 2006)

9

("Putative class members like Plaintiffs, who choose to file individual actions before there is a decision on class certification, are not entitled to the benefit of the class action tolling rule.").  Indeed, Michigan courts have extended this rule to instances where putative class members file their own actions while a dismissed putative class action lawsuit is pending on appeal.  For example, in *Beaulier v. Ford Motor Co.*, 2008 WL 5203958 (Mich. Cir. Ct. Jan. 28, 2008), *aff'd* 2008 WL 4367541 (Mich. Ct. App. Sept. 25, 2008), the plaintiffs argued for class action tolling based on MCR 3.501(F)(1).  *Id.*  Specifically, the plaintiffs argued that because they "were potential class members of the class action lawsuit filed on October 8, 2002 … their claims were tolled until final disposition of that case."  *Id.* The court went on to explain that the earlier class "action was dismissed on December 18, 2003 by the trial court … and affirmed by the Court of Appeals on May 24, 2005.  …. Leave to appeal to the Michigan Supreme Court was denied on March 22, 2006."  *Id.*  However, the plaintiffs in *Beaulier* filed their complaint on March 10, 2004 (*i.e.*, during the pendency of the appeal) and therefore "chose not to be included in that case."  *Id.*  "Thus, the tolling provisions of MCR 3.501 [could not] be invoked."  *Id.*

Here, similarly, had Plaintiffs filed this action after the District Court dismissed *Horton* – but during the pendency of the appeal – they may not have received the benefit of tolling under Michigan law.  Indeed, under Michigan law

10

Plaintiffs were supposed to wait until after all appeals had exhausted to file their case, which they did.  Given this rule of Michigan law, Defendant's interpretation of "final disposition" would lead to an absurd result whereby putative class members, like Plaintiffs, would be darned if they do, darned if they don't.  If putative class members did not file their own cases after a decision by the trial court dismissing the action, they would potentially be time-barred as the statute of limitations dwindled away as the case went through the appellate process.  But if putative class members filed their own cases after a dismissal by the trial court – but before all appeals were exhausted – they would be deemed to have "opted-out" of the class action and therefore would be denied the benefit of tolling.  This absurd catch-22 cannot be the law.  *See, e.g.*, *People v. Tennyson*, 487 Mich. 730, 741 (2010) ("Statues must be construed to prevent absurd results.").

Other courts, including courts within this District, have interpreted "final disposition" to require exhaustion of all appeals.  Indeed, as Judge Feikens explained, when a case "is on appeal, there has not been a final disposition of the case."  *Fidelity and Guar. Ins. Underwriters, Inc. v. Allstate Roofing and Paving*, 2008 WL 2364279, at *1 (E.D. Mich. May 28, 2008); *see also Ex Parte Russell*, 80 U.S. 664, 669 (1871) (finding that the "natural meaning of the words" "final disposition" is "the end of litigation thereon," which "cannot be said to have arrived as long as an appeal is pending"); *Scafar Contracting, Inc. v. Secretary of*

11

*Labor*, 325 F.3d 422, 431 (3d Cir. 2003 ) (finding that "'final disposition' should be interpreted as final and unappealable, where all rights to appeal [have] run"); *Sun-Times Media Grp., Inc. v. Black*, 954 A.2d 380, 383 (Del. Ch. 2008) ("I conclude that the final disposition of a proceeding in this context is the final, non-appealable conclusion to that proceeding."); *State ex rel. Schatz v. McCaughtry*, 664 N.W.2d 596, 605 (Wis. 2003) ("'[F]inal disposition' means the end of the period in which an appeal may be taken from a final order or judgment of the trial court, the end of the period within which an order for rehearing can be made in the highest appellate court to which an appeal is taken, or the final order or judgment of the court to which remand from an appellate court is made, whichever is latest."); *Annandale Advocate v. City of Annandale*, 435 N.W.2d 24, 27-28 (Minn. 1989) ("It is apparent from the legal dictionary and case law definitions that 'final decision' refers to a last decision of a person or body on a matter while 'final disposition' refers to the last and final determination of the matter itself."); "Final Disposition," *Black's Law Dictionary* (6th ed. 1990) ("Such a conclusive determination of the subject-matter embraced in a submission to arbitrators, that after the award is made nothing further remains to fix the rights and obligations of the parties, and no further controversy or litigation can arise thereon.") (citing *Quarture v. Allegheny Cnty.*, 14 A.2d 575, 578 (Pa. Sup. Ct. 1940)).

Defendant does not address any of this authority, nor does Defendant even

12

attempt to ascertain the meaning of "final disposition" as used in MCR

3.501(F)(2).  Instead, Defendant relies on federal cases such as *Collins v. Vill. of*

*Palatine*, 875 F.3d 839 (7th Cir. 2017) which have declined to extend *American*

*Pipe* tolling based on the pendency of an appeal.  MTD at 12.  But *American Pipe*

tolling does not contain a "final disposition" requirement to recommence the

statute of limitations, so the federal cases Defendants cite do not address that

requirement and are therefore inapposite.  As explained above, tolling in this case

is a question of Michigan law, not federal law.  *See supra* Argument § I.  And

under Michigan law, the statute of limitations does not recommence until "final

disposition of the action."  MCR 3.501(F)(2)(e).

Defendant's argument also fails as a matter of statutory interpretation.

"When called on to construe a court rule, [Michigan courts] appl[y] the legal

principles that govern the construction and application of statutes." *Grievance*

*Adm'r v. Underwood*, 462 Mich. 188, 193 (2000).  "The words chosen by the

Legislature are presumed intentional.  [Michigan courts] will not speculate that it

used one word when it meant another."  *Coblentz v. City of Novi*, 475 Mich. 558,

572 (2006).  Here, in drafting MCR 3.501(F)(e), the Michigan Supreme Court

chose to use the term "final disposition" rather than, for example, "final judgment"

or "final order."  That distinction is meaningful because Michigan's Court Rules

use the terms "final judgment" or "final order" in various Rules, and define the

terms to mean "the **<u>first</u>** judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties."  MCR 7.202(6)(a)(i) (emphasis added); *see also, e.g.*, MCR 2.107(B)(1)(c) (using the terms "final judgment or final order"); MCR 3.211(D)(2)(a) (same).  Thus, if the Michigan Supreme Court wanted the statute of limitations to recommence upon the entry of the "**<u>first</u>** judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties" – such as the District Court's February 27, 2019 decision in *Horton* – it would have drafted MCR 3.501(F)(e) to apply to the entry of a "final judgment" or a "final order."  But it did not.  Instead, it chose to use the phrase "final disposition."  This Court must presume that decision was "intentional," and may not "speculate that [the Michigan Supreme Court] used one word when it meant another."  *Coblentz*, 475 Mich. at 572; *see also People v. Peltola*, 489 Mich. 174, 185 (2011) ("Generally, when language is included in one section of a statute but omitted from another section, it is presumed that the drafters acted intentionally and purposely in their inclusion or exclusion. Similarly, courts cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute, and then, on the basis of that assumption, apply what is not there.") (quotations omitted).

As a last-ditch effort, Defendant argues that "MCR 3.501(F)(3) expressly addresses" this scenario.  MTD at 12 n.10.  Pursuant to that Rule, "[i]f the

14

circumstance that brought about the resumption of the running of the statute is superseded by a further order of the trial court, by reversal on appeal, or otherwise, the statute of limitations shall be deemed to have been tolled continuously from the commencement of the action."  MCR 3.501(F)(3).  But nothing in that Rule indicates that it is intended to apply to all of the circumstances in MCR 3.501(F)(2).  Indeed, other circumstances within the Rule are ripe to be "superseded by a further order of the trial court, by reversal on appeal, or otherwise," such as "on entry of an order denying certification of the action as a class action."  MCR 3.501(F)(2)(c); *see, e.g.*, *Hill v. City of Warren*, 276 Mich. App. 299, 316 (2007) ("[T]he trial court's conclusion that its earlier denial of class certification had been incorrect superseded the 'circumstances that brought about the resumption of the running of the statute.'  Therefore, there is no limitations period on the unnamed class members' becoming part of the litigation.").  Reading MCR 3.501(F)(3) to apply to circumstances such as where the denial of class certification is reversed, rather than to limit the application of the "final disposition" circumstance produces a more harmonious reading of the Rule.  *See, e.g.*, *Macomb County Prosecutor v. Murphy*, 464 Mich. 149, 159 (2001) ("We construe an act as a whole to harmonize its provisions and carry out the purpose of the Legislature.").

In sum, Plaintiffs' claims were tolled by MCR 3.501(F) from May 4, 2018,

the date *Horton* was filed, until May 6, 2020, the day all appeals in *Horton* were exhausted, *i.e.*, the date of final disposition.  As discussed herein, they remained tolled all the way through the filing of this lawsuit by Michigan's COVID-19 Executive and Administrative Orders related to statutes of limitation.

**B.    Plaintiffs' Claims Were Also Tolled By Michigan's COVID-19 Executive And Administrative Orders Related To Statutes Of Limitation**

Plaintiffs' claims were also tolled from March 10, 2020 through the filing of this lawsuit by Governor Whitmer's Executive Order and the Michigan Supreme Court's Administrative Order (together, the "COVID-19 Orders") tolling the statute of limitations for all Michigan claims due to COVID-19.  *See* Plfs.' Ex. A, Mich. Executive Order 2020-58 ("[A]ll deadlines applicable to the commencement of all civil and probate actions and proceedings, **including but not limited to any deadline for filing an initial pleading** … are suspended as of March 10, 2020 **and shall be tolled** until the end of the declared states of disaster and emergency.") (emphasis added); Def.'s Ex. 6, Mich. Supreme Court Administrative Order 2020-3 ("For all deadlines applicable to the commencement of all civil and probate case types, **including but not limited to the deadline for the initial filing of a pleading** … any day that falls during the state of emergency declared by the Governor related to COVID-19 is not included.") (emphasis added).  The COVID-19 Orders remained in place until June 20, 2020.  *See* Plfs.' Ex. B, Mich. Executive

Order 2020-122; Def.'s Ex. 7, Mich. Supreme Court Administrative Order 2020-18.

Defendant does not even address Executive Order 2020-58.  Defendant presumably ignores Executive Order 2020-58 because under Michigan law "the Governor's action [in issuing an Executive Order] has the status of enacted legislation."  *Straus v. Governor*, 459 Mich. 526, 534 (1999).  Thus, because the *Erie* doctrine requires this Court to apply Michigan statute of limitations and tolling rules, and because Executive Order 2020-58 has the same status as enacted legislation under Michigan law, the Court is compelled to apply Executive Order 2020-58.  And pursuant to Executive Order 2020-58, Plaintiffs' "deadline for filing [their] initial pleading … [was] suspended as of March 10, 2020" and remained suspended until June 20, 2020.  *See* Mich. Executive Order 2020-58; Executive Order 2020-122.  Indeed, other federal courts have applied tolling Executive Orders issued by Governors during state of emergencies to toll the statute of limitations for state law claims filed in federal court.  *See, e.g.*, *Brown v. City of New Orleans*, 2007 WL 2480984, at *4-5 (E.D. La. Aug. 30, 2007) (applying Louisiana Governor Blanco's Executive Orders "suspending the limitations period applicable in this case"); *Carrol v. Gusman*, 2009 WL 2949997, at *5 (E.D. La. Sept. 10, 2009) (same).  The Court's inquiry should end here.

Nonetheless, Defendant argues that the Michigan Supreme Court's "COVID

Administrative Orders do not apply to extend the statute of limitations applicable to this action in federal court."  MTD at 18.  But the scant authority Defendant provides in support is easily distinguishable.  *Burkholder v. Lenawee County Road Comm'n*, 905 F. Supp. 421, 428 n.8 (E.D. Mich. 1995) did not concern tolling of a state statute of limitations, which pursuant to *Erie* and its progeny, is a question of state law.  And *Spelta v. Bakker*, 2020 WL 2732070 (D. Md. May 26, 2020) concerned the 30-day deadline by which a defendant must remove a case filed in state court to federal court under 28 U.S.C. § 1446(b).  *Id.* at *2.  That deadline is purely a question of federal law, and state law obviously would not apply accordingly.  *Id.* at *3 ("[A]ny extension of deadlines for state court actions … has no impact on the deadline for removal under federal law.").

Defendant also argues that Plaintiffs should not receive the benefit of tolling under the Michigan COVID-19 Orders because "nothing was preventing [them] from seeking redress on an individual basis in Michigan state court," but "they elected to file this case in federal court specifically to *avoid* Michigan's express bar to PPPA class claims."  MTD at 17-18.  That is irrelevant.  "It is well settled that the plaintiff is the master of his claim, and may choose what law to rely on … where Congress has provided for concurrent jurisdiction in state and federal courts, the claim may be asserted in either court."  *Dorsey v. City of Detroit*, 858 F.2d 338, 340-41 (6th Cir. 1988) (quotations omitted).  Indeed, as the Supreme Court stated

"divergence from state law … is the inevitable (indeed, one might say the intended) result of a uniform system of federal procedure.  Congress itself has created the possibility that the same case may follow a different course if filed in federal instead of state court." *Shady Grove*, 559 U.S. at 416.  Plaintiffs' strategic choice of forum does not change the fact that the Court must apply state law to determine tolling of the statute of limitations, even if the case could not proceed as a class action in state court.  *See, e.g.*, *Hearst*, 269 F. Supp. 3d at 187-89 (applying Michigan tolling rules to toll the statute of limitations in a class action under the PPPA filed in federal court that could not have been maintained in state court).

Finally, Defendant resorts to a policy argument with no basis in law or text to argue that "the Michigan COVID Administrative Orders have no bearing on the realities of litigation in federal courts," because unlike the federal courts, "not every Michigan state trial court has the capacity to accept e-filings."  MTD at 18 n.12.  But neither the applicable Executive Order nor Administrative Order contain any distinction between in-person and electronic filings.  *See* Mich. Executive Order 2020-58; Mich. Supreme Court Administrative Order 2020-3.  If Governor Whitmer and the Michigan Supreme Court wanted their tolling orders to be limited to courts with capacity to accept in-person filings only, they would have so stated.  Regardless of whether Defendant finds their actions wise, this Court "cannot serve as political overseer[] of the executive or legislative branches, weighing the costs

19

and benefits of competing political ideas or the wisdom of the executive or legislative branches in taking certain actions." *Straus*, 459 Mich. at 531.

In sum, Michigan's COVID-19 Orders serve as a separate basis for tolling of the statute of limitations on Plaintiffs' claims.  In the unlikely event that Plaintiffs' claims were not tolled until exhaustion of all appeals in *Horton*, Plaintiffs would agree with Defendant that the applicable class period would be May 16, 2016, to July 30, 2016.  *See* MTD at 22.

## III.   *CHINA AGRITECH* IS INAPPLICABLE

Relying on the Supreme Court's decision in *China Agritech v. Resh*, 138 S. Ct. 1800, Defendant argues that "at most only [Plaintiffs'] *individual* claims would have survived," not their ability to bring a class action.  MTD at 13.  That is wrong for two reasons.  First, once again, tolling is an issue of state law, and the Michigan Supreme Court has already expressly declined to implement a rule barring successive class actions.  No Michigan court has adopted *China Agritech*.  Second, even if *China Agritech* applied, its holding is limited to situations where class certification was denied in the initial action.  It does not apply where, as here, a decision on class certification was not reached in the initial action.

### A.   The Michigan Supreme Court Expressly Declined To Implement A Rule Barring Successive Class Actions

In *Cowles*, the Michigan Supreme Court expressly declined to implement a rule barring successive class actions.  *Cowles*, 476 Mich. at 29.  There, the dissent

echoed Defendant's argument and stated that the majority's holding "would allow

piggybacking of one class action onto another and, thus, tolling the period of

limitations indefinitely." *Id.* at 29; *see also* MTD at 13 ("'*American Pipe* does not

permit a plaintiff who waits out the statute of limitations to piggyback on an

earlier, timely filed class action.'") (quoting *China Agritech*, 138 S. Ct. at 1806).

But the majority rejected that argument.  As the majority noted, "[w]here class

certification is denied or terminated on the basis that the *class representative* was

inappropriate – i.e., not on the appropriateness of class treatment for the *underlying*

*claims* – tolling is permitted." *Id.* at 29-30.  "Thus, where class certification is

denied solely on the basis of the appropriateness of the class representative, a

second class would not be an attempt to relitigate the question of class certification

and thus, judicial economy and the class mechanism will be furthered." *Id.* at 30.

That is exactly what happened in *Horton*.  The *Horton* District Court did not make

a ruling on the appropriateness of class treatment for the underlying claims.

Rather, the *Horton* District Court held that Mr. Horton was "barred from

proceeding on a class basis based on the Class Waiver" in the online subscription

agreement he agreed to.  *Horton*, 2019 WL 952314, at *2.  Thus, Mr. Horton was

not an appropriate class representative.[2]

---

[2] Plaintiffs' proposed class excludes "any person who has ever entered into a
version of *The Wall Street Journal* 'Subscriber Agreement' that contained a second

As Defendant concedes, "Michigan state courts have yet to interpret MCR 3.501(F) in light of *China Agritech*."  MTD at 15.  Thus, the Michigan Supreme Court's holding in *Cowles* controls.  *See Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*, 898 F.3d 710, 715 (6th Cir. 2018) ("In this diversity action, we apply Michigan tort and contract law.  …  In doing so, our task is to apply the same law that Michigan state courts would apply.  …  **If the Michigan Supreme Court has spoken on an issue, we are generally bound by that decision**.") (emphasis added).  *China Agritech* does not apply, and Plaintiffs' class claims are tolled.  *See also Famular v. Whirlpool Corp.*, 2019 WL 1254882, at *13 ("*American Pipe* tolling applies <u>only</u> to cases with federal question jurisdiction over federal claims.  …  *China Agritech* only concerned the tolling rule announced in *American Pipe*, and therefore, only applies to cases with federal question jurisdiction over federal claims.").

**B.**     ***China Agritech* Does Not Bar Successive Class Actions Where The Initial Action Was Dismissed Prior To A Decision On Class Certification**

Even if *China Agritech* applied to this question of Michigan law, its holding still would not bar Plaintiffs from proceeding in a class action.  In *China Agritech*, the Supreme Court held that "a plaintiff may not bring a 'follow-on class action

---

titled 'Agreement to Arbitrate' with Defendant."  Compl. ¶ 51.  And Defendant does not contend that Plaintiffs ever entered into such an agreement.

past expiration of the statute of limitations' ***after the denial of class certification***

***in an earlier action***." *Hart v. BHH, LLC*, 2018 WL 5729294, at \*2 (S.D.N.Y.

Nov. 2, 2018) (emphasis added) (quoting *China Agritech*, 138 S. Ct. at 1804)).

Thus, *China Agritech* is inapplicable where, as here, "there has been no prior

determination on the issue of class certification." *See Betances v. Fischer*, 403 F.

Supp. 3d 212, 223 (S.D.N.Y. 2019) (capitalization in original); *id.* at 224 ("*China*

*Agritech* thus stands for the proposition that [class action] tolling does not save a

subsequently filed class action when class certification previously has been denied.

*China Agritech* did not involve and did not address application of [class action

tolling] to a case like this one, where prior class actions had been filed but

dismissed for reasons separate and apart from the propriety of class certification.");

*see also In re Snap Inc. Sec. Litig.*, 334 F.R.D. 209, 222-23 (C.D. Cal. 2019)

(*China Agritech* does not apply because "class certification has never been

addressed on the merits"); *Badzio v. Americare Certified Special Servs., Inc.*, 177

A.D.3d 838, 842-43 (N.Y. App. Div. 2019) ("[A]pplying *American Pipe* tolling

under the circumstances, where a court has not previously addressed the

impropriety of class certification, is consistent with the policies underlying the

tolling doctrine:  avoiding multiplicity of suits and vexatious litigation.").

        Defendant's reliance on *Practice Mgmt. Support Servs. v. Cirque Du Soleil*

*Inc.*, 2018 WL 3659349, at \*4 (N.D. Ill. Aug. 2, 2018) does not compel a different

conclusion.  As Defendant notes, the *Practice Management* court relied on the policy rationale that failing to adopt a blanket bar on tolling of successive class actions, "would allow an infinite succession of class suits, upending the balance between judicial economy and a defendant's right to finality."  MTD at 16.  But as aforementioned, the Michigan Supreme Court rejected this rationale in *Cowles*.

## IV.    PLAINTIFFS STATE A CLAIM FOR UNJUST ENRICHMENT

Defendant argues that Plaintiffs' unjust enrichment claim should be dismissed for two reasons.  MTD at 23-25.  First, Defendant argues that "the Complaint fails to allege any unjust benefit that Defendants received here."  *Id.* at 23-24.  But that is wrong.  In order to state a claim for unjust enrichment under Michigan law a plaintiff must plead "(1) the receipt of a benefit by the other party from the complaining party and (2) an inequity resulting to the complaining party because of the retention of the benefit by the other party."  *Karaus v. Bank of New York Mellon*, 300 Mich. App. 9, 22-23 (2012).  Here, Plaintiffs alleged that Defendant was unjustly enriched when it retained the monies Plaintiffs paid for their newspaper purchases (a benefit), but disclosed Plaintiffs' Personal Reading Information for a profit (an inequity).  *See* Compl. ¶¶ 83-84; 86-87.  These allegations state a claim for unjust enrichment.  *See, e.g.*, *Kinder v. Meredith Corp.,* 2014 WL 4209575, at *7 (E.D. Mich. Aug. 26, 2014) ("Kinder alleges that Meredith was unjustly enriched when it retained her subscription fees but disclosed

her personal reading information.  Because Kinder has sufficiently alleged that Meredith was unjustly enriched, this claim will not be dismissed."); *Coulter-Owens v. Rodale, Inc.*, 2015 WL 575004, at *5 (E.D. Mich. Feb. 11, 2015) ("Taking her allegations as true, Coulter-Owens properly alleges a claim for unjust enrichment; she says Rodale received a monetary benefit from illegally disclosing its subscribers' confidential information.  This allegation meets the requirements for an unjust enrichment claim.").

Second, Defendant argues that Plaintiffs' unjust enrichment claim must be dismissed because it is "entirely duplicative of their PPPA claim."  MTD at 24. But this argument has been rejected by every court that has considered it.  *See, e.g.*, *Perlin v. Time Inc.*, 237 F. Supp. 3d 623, 643-44 (E.D. Mich. 2017) (holding that the PPPA does not foreclose a claim for unjust enrichment); *Moeller v. Am. Media, Inc.*, 235 F. Supp. 3d 868, 876 (E.D. Mich. 2017) (same) (citing cases).

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss in its entirety.

Dated:  September 8, 2020                     Respectfully submitted,

By:_____*/s Philip L. Fraietta*_____
One of Plaintiffs' Attorneys

## <u>CERTIFICATE OF SERVICE</u>

I, Philip L. Fraietta, an attorney, hereby certify that on September 8, 2020, I served the above and foregoing ***Plaintiffs' Response To Defendant's Motion To Dismiss*** on all counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF filing system.

<u>      */s Philip L. Fraietta*</u>
Philip L. Fraietta